**GUARDIAN INSURANCE, INC, Plaintiff**

**v.**

**ADNAN RAHHAL, Defendant**

Civil No. SX-08-CV-481

Superior Court of the Virgin Islands

Division of St. Croix

September 25, 2015

MARIA TANKENSON HODGE, ESQ., Hodge & Hodge, St. Thomas, USVI, *Attorney for Plaintiff.*

EDWARD L. BARRY, ESQ., Law Offices of Edward L. Barry, Christiansted, St. Croix, USVI, *Attorney for Defendant*.

MOLLOY, *Judge of the Superior Court*

## ACTION FOR DECLARATORY JUDGMENT

## MEMORANDUM OPINION

(September 25, 2015)

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment filed on May 7, 2009. Defendant filed an opposition on July 27, 2009. For the reasons stated below, the Court will grant Plaintiff's motion.

## I. FACTUAL BACKGROUND

This action for declaratory judgment stems from an automobile liability insurance policy issued by Plaintiff Guardian Insurance, Inc. ("Guardian") to Defendant Adnan Rahhal ("Rahhal"). Rahhal was in the business of buying and selling vehicles through his dealership that he purchased from various sources, including auctions. He bought the vehicle at issue in this matter, a 2002 Ford Escape ("Vehicle"), at a February 2005 auction in St. Thomas, U.S. Virgin Islands. When Rahhal purchased the Vehicle, it was registered to Metro Motors of St. Thomas. During this time, Rahhal carried automobile liability insurance issued by Guardian which would provide coverage for Rahhal's motor vehicles when operated on the public roadways. Rahhal never registered the Vehicle with the Virgin Islands Bureau of Motor Vehicles ("BMV") to record change of ownership. Instead, Rahhal possessed a single dealer plate which he placed on the Ford Escape sometime after he bought it. On April 8, 2005, Rahhal sold the Vehicle to Richard Daley ("Daley"), at which time the dealer plate was removed and replaced with the original plate which was still registered to Metro Motors. Rahhal prepared and executed a bill of sale for the Vehicle between himself and Daley, reciting that Rahhal was selling the vehicle described therein to Daley. There is no indication that Daley ever registered the Vehicle with the BMV.

On October 28, 2005, Daley was involved in a collision with Tammy Stevens while driving the Vehicle. At the time of the collision, Rahhal's dealer plate was not on the Vehicle, and the police report indicated that the

Vehicle was still registered to Metro Motors of St. Thomas. On or about August 16, 2006, Rahhal was sued by Tammy Stevens and Jacyline Gerson as a result of damages allegedly sustained in the collision ("Damages Action") in the matter styled *Stevens, et al. v. Daley, et al.,* Super. Ct. Civ. No. SX-06-CV-525.[1] In that lawsuit, Stevens and Gerson alleged that the automobile Daley was driving at the time of the accident had been sold to Daley without a proper transfer of title. Although Guardian initially obtained legal counsel to represent Rahhal in the Damages Action, Guardian later refused to continue with its representation after a review of the lawsuit. Rahhal objected to Guardian's refusal to provide representation in the Damages Action.

Guardian filed this action for declaratory judgment on October 8, 2008, seeking a determination that the business automobile coverage policy does not provide coverage for Rahhal's claim and that Guardian is not required to provide representation for Rahhal in the Damages Action.

## II. LEGAL STANDARD

Summary Judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts that could alter the outcome are 'material facts' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Clark v. Modern Group, Ltd.,* 9 F.3d 321, 326 (3d Cir. 1993). Moreover, a factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. The Court may not make credibility determinations or weigh evidence. *Id.* at 255. If the record thus construed could not lead the trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587.

The moving party must support the motion by "identify[ing] those portions of the record that demonstrate the absence of a genuine issue of

---

[1] This lawsuit was initiated on August 16, 2006, but Plaintiff filed its First Amended Complaint on November 19, 2007.

material fact." *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013). If the moving party does so, "the burden shifts to the non-moving party to present 'affirmative evidence' from which a jury might reasonably return a verdict in his favor." *Id.* The Court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party. *Joseph v. Daily News Publishing Co., Inc.*, 57 V.I. 566, 581 (V.I. 2012). All allegations of the non-moving party supported by proper proofs must be accepted by the Court as true for the purposes of deciding the motion. *Id.* The Court's role in deciding a motion for summary judgment is not to determine truth, but rather to determine whether a factual dispute exists that warrants a trial on the merits. *Williams v. United Corp.*, 50 V.I. 191, 195 (V.I. 2008). Where such a factual dispute exists, the Court must deny summary judgment.

## III. DISCUSSION

█ Under Virgin Islands law, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy." 22 V.I.C. § 846. Furthermore, "[i]n the Virgin Islands '[t]he interpretation, construction and legal effect of an insurance policy is a question to be determined by the court *as a matter of law.*' " *James v. Guardian Ins. Co.*, 2015 V.I. LEXIS 85, at *10 (V.I. Super. Ct. July 14, 2015) (citations omitted). Additionally, "[c]ourts 'should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them.' " *Id.* at *11. Finally, "[i]f the terms of a policy are unambiguous, it must be construed according to its plain language." *Id.*

█ Accordingly, the Court evaluates the terms of the policy to determine whether they are ambiguous. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 814 (3d Cir. 1994). A term is ambiguous if more than one reasonable interpretation of the term exists. *Id.* If the court finds that the policy is unambiguous, the court must give effect to the terms as stated on the face of the policy. However, if the court identifies an ambiguity in the policy, the court must resolve the ambiguity by giving effect to the interpretation of the term that is most favorable to the insured, as the non-drafting party. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004).

Guardian argues that it is not bound to cover Rahhal or Daley for the October 28, 2005 collision involving the Vehicle. Specifically, Guardian claims that the insurance policy that it issued Rahhal did not cover the Vehicle at the time of this collision. Guardian contends that the language of the policy prohibits coverage where the dealer's plate is not affixed to the Vehicle, the Vehicle is not owned by the policy holder, and where the Vehicle is sold, including a "de facto" transfer. Guardian further contends that Rahhal's policy "clearly provides liability coverage only for a vehicle owned by Rahhal that bears his single Dealer Plate." Pl.'s Mot. for Summ. J. at 2.

In response, Rahhal argues that the policy identification of a "covered auto" in the policy is ambiguous in nature and that there is a genuine dispute of material fact as to the parties' understanding and intent with regards to insurance coverage. Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 5. Rahhal also argues that the policy does not indicate that the "Dealer Plate" must be attached to the Vehicle in order for the Vehicle to be covered under the policy. *Id.* at 3. Although Rahhal admits that he sold the Vehicle to Daley, he states that he did so without a proper transfer of title and that any de facto transfer is void against public policy.

Both parties cite to *Rivera v. National Car Rental Sys.*, 14 V.I. 481 (D.V.I. 1978) — a case with facts similar to the instant matter-in their respective briefs. In *Rivera*, National Car Rental Systems sold an automobile to Rivera. National failed to register the transfer of ownership as required by 20 V.I.C. § 335, as it was then written. *Id.* at 483. Then, while the car was still registered to National, Rivera negligently caused a car accident. Pursuant to 20 V.I.C. § 335, the court determined that National was still liable for injuries caused by the operation of the car which was still registered in National's name. *Id.* at 485-86 (finding that section 335 mandated that "the seller must register such change with the Commissioner of Public Safety before the buyer is allowed to operate the vehicle on the public highways."). The court found that section 335 imposed a duty on National to register the change of ownership with the Commissioner of Public Safety, and that National's failure to do so made them liable for damages caused by the operation of that car. *Id.* The *Rivera* court reasoned that "a vendor who fails to comply with the dictates of § 335 must stand the consequences, which is, to be deemed the owner of the vehicle and be liable for any injury caused by its operation, given

negligence, even though the purchase price has been paid and delivery completed." *Id.* at 486.

After *Rivera*, the Legislature revised 20 V.I.C. § 335, and "took out the language on which the *Rivera* court based its holding that the registered owner of a vehicle, having sold that vehicle without officially registering the change of ownership, is liable to a third party in a personal injury action involving that vehicle." *Krind v. Barlow*, 44 V.I. 293, 297 (V.I. Terr. Ct. 2002). Because the provision the *Rivera* court relied on to void the transfer in that case is no longer in section 335, a seller's noncompliance with section 335 no longer voids the transfer for liability purposes. *Id.* at 297 ("section 335 no longer declares that noncompliance with its provisions makes the transfer void for liability purposes, since it no longer requires that a seller fully comply with the statute before he is released from liability."). The *Krind* court further determined that, for liability purposes, the transfer occurred "at the time and place physical delivery was completed." *Id. at 298.* The *Krind* court applied the Virgin Islands uniform commercial Code, codified at 11A V.I.C. § 2-401, to reach this conclusion.

■ In this matter, the Court finds that Guardian is entitled to summary judgment. First, under 11A V.I.C. § 2-401 the title of the Vehicle passed from Rahhal to Daley before the Vehicle was involved in the collision while Daley was driving it. The undisputed facts make clear that on April 8, 2005, Rahhal sold the Vehicle to Daley, and this sale was accompanied by a bill of sale signed by both Rahhal and Daley. *See* Bill of Sale attached as Ex. 4 to Pl.'s Motion for Summ. J. This Bill of Sale stated that the Vehicle was being sold "as is where is." *Id.* After the Bill of Sale was fully executed, Daley drove off with the Vehicle. Pl.'s Mot. for Summ. J. Ex. 1. This transfer of ownership represents a valid transfer of title of the Vehicle under 11A V.I.C. § 2-401(2) because "title passe[d] to the buyer at the time and place at which the seller complete[d] his performance with reference to the physical delivery of the goods." Furthermore, the unambiguous terms of Rahhal's insurance policy state that "[a]ny insurance coverage with respect to a vehicle, if provided by the policy, will be terminated and void as to that vehicle *the moment the insured sells it and this includes a de facto transfer.*" *See* Business Automobile Policy-GIC-3 Mandatory Endorsement, ¶ 4 attached as Ex. 3 to Pl.'s Mot. for Summ. J. (emphasis added). Under these undisputed facts, title of the Vehicle passed from Rahhal to Daley when these parties effectuated the

sale between them on April 8, 2005. Therefore, under 11A V.I.C. § 2-401, *Krind*, and a plain reading of Rahhal's business automobile policy written by Guardian, the automobile policy ceased to cover the Vehicle when Rahhal sold it to Daley.

Second, Guardian is entitled to judgment as a matter of law under the undisputed facts of this case because the plain terms of Rahhal's Guardian-issued business automobile policy covered the Vehicle on the roadways only if it displayed the dealer plate associated with that policy. The undisputed evidence in this case demonstrates that from December 29, 2004 until December 29, 2005, Rahhal held a Guardian-issued business automobile policy which listed "dealer plate" under covered autos. Rahhal placed the dealer plate on the Vehicle while he owned it. When Rahhal sold the Vehicle to Daley he removed his dealer license plate at that time and replaced it with the original license place. Daley was involved in a traffic collision during which he was driving the Vehicle on October 28, 2005. The Vehicle bore a license plate registered to Metro Motors of St. Thomas at the time of Daley's collision. Because the Vehicle belonged to Daley at the time of the collision and did not bear the "dealer plate" belonging to Rahhal, the Court holds that Guardian is entitled to a declaratory judgment finding that there is no coverage afforded to Rahhal, or any person, under Rahhal's policy for claims arising from the October 28, 2005 accident involving the Vehicle.

## IV. CONCLUSION

For the reasons stated above the Court will grant summary judgment in favor of Guardian. An appropriate Judgment follows.